# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

BONNIE COLE and LYLE COLE, individually and as next friends of P.C., a minor,

      Plaintiffs,

vs.

TRINITY HEALTH CORPORATION,

      Defendant.

No. C12-3075-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND..............................................2*
   *A.   Factual Background ........................................................2*
   *B.   Procedural Background ...................................................5*

*II. LEGAL ANALYSIS .........................................................................6*
   *A.   Summary Judgment Standards........................................6*
   *B.   COBRA Notice And Civil Penalty .....................................9*

*III. CONCLUSION ............................................................................. 15*

      The continuation of health insurance coverage is an important concern to employees facing the loss of employment. Congress recognized this in the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), by amending

the Employee Retirement Income Security Act ("ERISA") to require that covered group health plans "provide . . . that each qualified beneficiary who would lose coverage . . . as a result of a qualifying event is entitled . . . to elect . . . continuation coverage under the plan." 29 U.S.C. § 1161(a). Termination of employment is a "qualifying event" for purposes of this COBRA requirement. *See* 29 U.S.C. § 1163(2). Plaintiffs allege that Bonnie Cole's former employer, defendant Trinity Health Corporation ("Trinity Health"), failed to give them timely notice of their right to elect continued health insurance as required by 29 U.S.C. § 1166(a)(4). Trinity Health does not dispute that it did not provide plaintiffs with timely notice of their COBRA rights. Trinity Health, however, claims that a statutory penalty for its notice violation is inappropriate because plaintiffs' alleged damages are of considerably less value than the free health care insurance coverage they received over an extended period as a result. This issue, and others, is presented by Trinity Health's motion for summary judgment.

## I. INTRODUCTION AND BACKGROUND

### A. *Factual Background*

I set out only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning the defendant's motion for summary judgment and resistance to it. At least for the purposes of summary judgment, the facts recited here are undisputed. I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

Plaintiff Bonnie Cole was previously employed by Mercy Medical Center. She began working at Mercy Medical Center in 2007. Bonnie transitioned to be an employee of defendant Trinity Health in July 2010. Trinity Health provides its employees and their families with benefits, including participation in an employer-

sponsored group health plan ("the Plan"). Only current employees and their spouses or dependents are eligible to participate in the Plan. Bonnie enrolled in the Plan with Blue Cross Blue Shield of Michigan ("Blue Cross"), with an effective date of July 11, 2010. Plaintiff Lyle Cole is Bonnie's husband and plaintiff P.C. is Bonnie and Lyle's minor son (collectively, "the Coles"). Lyle and P.C. were also enrolled in the Plan, with the same effective date, as beneficiaries. Lyle and P.C. were eligible for enrollment in the Plan because Bonnie was a participant.

Bonnie went on leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, beginning in December 2010. Bonnie's FMLA leave expired on March 2, 2011 and she transitioned to short-term disability leave at that time. Bonnie's short-term disability leave expired on June 8, 2011. She received a letter dated May 27, 2011, alerting her to the expiration of her short-term disability benefits on June 8, 2011. At this point, Bonnie applied for long-term disability benefits. From July 6, 2011, to October 2011, Bonnie received long-term disability benefits from UNUM, Trinity Health's long-term disability benefits provider, under a "reservation of rights." On October 11, 2011, UNUM denied Bonnie long-term disability benefits, and notified Bonnie of its decision on that date. UNUM decided that it would not request repayment from Bonnie of the long-term disability benefits it paid her under the reservation of rights. On October 18, 2011, Bonnie called Trinity Health and asked what her termination date would be. Trinity Health told Bonnie that they would confirm the termination of her long-term disability claim with UNUM and check with their human resources department.

Bonnie subsequently received a "2012 Benefit Confirmation Statement" dated January 1, 2012. Lyle received a letter dated March 13, 2012, from Blue Cross which stated, in part, that: "You have successfully completed your Blue Cross Blue Shield of

3

Michigan health plan requirements. You are eligible to remain in the enhanced benefit level." Blue Cross Letter at 1; Plaintiffs' App. Ex. 6 at 1.

Bonnie's termination date should have been June 8, 2011, the last date on which she was qualified for disability benefits and considered an employee. At the time Bonnie was denied long-term disability benefits in October 2011, an error was made and Bonnie's termination was not processed. In late April 2012, it was discovered that Bonnie had not been terminated in the Trinity Health system. On April 27, 2012, Trinity Health entered Bonnie's termination in its system, effective June 8, 2011. Trinity Health also terminated the Coles' benefits effective January 1, 2012. Trinity Health notified Blue Cross of this termination.

Although the Trinity Health system indicated a "COBRA Term Sent Date" of May 8, 2012, a COBRA notice was not sent on May 8, 2012, when Bonnie's termination was processed. On June 1, 2012, Lyle visited his doctor and was notified that the Coles no longer had health insurance. In response, Bonnie contacted Blue Cross for clarification. On June 8, 2012, Bonnie received a letter from Blue Cross that the Coles' health care coverage had ended on January 1, 2012. This letter was the first notice the Coles received that their health insurance coverage was cancelled.

When Trinity Health became aware of the Coles' benefits situation, in order to assist the Coles in switching to Lyle's employer's plan, Trinity Health provided Bonnie with a letter dated June 19, 2012, in which Trinity Health explained that Bonnie had not been given notice of the termination of her health coverage prior to June 8, 2012.

The Coles were able to join a Humana insurance health care plan offered through Lyle's employer, Menards, Inc., with an effective date of June 1, 2012. By the time Bonnie's benefits termination had been communicated to Blue Cross in May 2012, the Coles had received benefits covered by Blue Cross through April 2012. Blue Cross did not deny any claims submitted by the Coles based on the termination of coverage until

4

May 1, 2012. Blue Cross has not sought a refund from any medical provider for any of the Coles' claims covered by Blue Cross between January 1, 2012 and April 30, 2012. The Coles had $1307 in medical claims denied by Blue Cross beginning on May 1, 2012.

At the time Bonnie's short-term disability benefits expired in June 2011, her employee portion of her family's health insurance premiums was $135.12 per two-week pay period. Trinity Health's portion of the Coles' health insurance premiums was $405.37 per two-week pay period. The last date of the pay period for which Bonnie paid the employee contribution for her health insurance was June 11, 2011. This premium was deducted from the last paycheck Bonnie received from Trinity Health on June 16, 2011.

## B.  *Procedural Background*

On October 16, 2012, the Coles filed a Complaint alleging the following two causes of action against Trinity Health: (1) that Trinity Health violated ERISA, 29 U.S.C. § 1001 *et seq.*, by failing to notify them of their COBRA right to continuing health care coverage, 29 U.S.C. § 1166 *et seq.*; and (2) improper rescission of health care benefits, in violation of the Patient Protection and Affordable Care Act of 2010 ("ACA"), 42 U.S.C. § 300gg-12.[1] Trinity Health moves for summary judgment on four grounds. First, Trinity Health argues that it is entitled to summary judgment on the Coles' ACA claim because there is no private cause of action for statutory damages based on a violation of 42 U.S.C. § 300gg-12. Second, Trinity Health argues that it is

---

[1] Blue Cross, the Plan's group health insurance provider, was also originally named as a defendant. The Coles have dismissed their claims against Blue Cross.

entitled to summary judgment on the Coles' ACA claim because no rescission of the Coles' health care coverage occurred. Third, Trinity Health contends that statutory penalties for its COBRA violation may only be assessed to a single participant, here Bonnie. Thus, Trinity Health seeks summary judgment in its favor on Lyle and P.S.'s claims for statutory damages under § 1166(a)(4). Finally, Trinity Health argues that it is entitled to summary judgment on the Coles' claims for statutory damages under both ERISA and the ACA because any alleged damages suffered by the Coles are not significant when compared to the free health care benefit they received as a result of its delay in processing Bonnie's termination.

The Coles filed a timely response to Trinity Health's motion for summary judgment in which they acknowledge that summary judgment is appropriate on their ACA claim because no rescission occurred here.[2] The Coles, however, argue that summary judgment is inappropriate on their ERISA claim. Trinity Health in turn has filed a timely brief in reply.

## II. LEGAL ANALYSIS

### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims

---

[2]Because the Coles concede that summary judgment against them on their ACA claim is appropriate, Trinity Health's motion for summary judgment is granted as to the Coles' ACA claim.

6

or defenses. . . .")." Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party

7

has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ---U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006). Consequently, I turn to consider the parties' arguments for and against summary judgment.

### B. COBRA Notice And Civil Penalty

The Coles seek statutory damages for Trinity Health's failure to timely notify them of their COBRA rights to continuing health care coverage. COBRA permits employees to continue their health insurance coverage at the group rate after termination of employment.[3] 29 U.S.C.A. §§ 1161(a), 1163. COBRA requires an administrator to give each participant a notice of certain health insurance coverage rights upon a "qualifying event," such as the termination of the participant's employment. 29 U.S.C. § 1166(a). COBRA specifies that "the employer . . . must notify the [group health plan] administrator . . . within 30 days" of the employee's termination, 29 U.S.C.A. § 1166(a)(2), and then the administrator must notify the employee of his or her rights to continuing coverage within 14 days. 29 U.S.C.A. §§ 1162(a)(4), (c). ERISA, in turn, provides that a plan administrator who fails to meet the COBRA notice requirements "may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $[110] a day from the date of

---

[3]COBRA states that "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a).

such failure or refusal. . . ." 29 U.S.C. § 1132(c)(1).[4] "'The purpose of this statutory penalty is to provide plan administrators with an incentive to comply with the requirements of ERISA and to punish noncompliance.'" *In re Interstate Bakeries Corp.*, 704 F.3d 528, 534 (8th Cir. 2013) (quoting *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006) (citations omitted). "In exercising its discretion to impose statutory damages, a court primarily should consider 'the prejudice to the plaintiff and the nature of the plan administrator's conduct.'" *Id.* (quoting *Starr*, 461 F.3d at 1040) (quoting in turn *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 948 (8th Cir. 1999) (internal quotation marks omitted).

Trinity Health bears the burden of demonstrating that timely notice was given. *See Chesnut v. Montgomery*, 307 F.3d 698, 702 (8th Cir. 2002). Trinity Health concedes that it did not send the Coles any COBRA notification immediately following Bonnie's termination. Trinity Health argues that a civil penalty here is unwarranted because the Coles received approximately eleven months of free health insurance coverage and the value of this free coverage far exceeds the $1307 in medical claims incurred by the Coles before they could obtain medical coverage through Lyle's employer's group plan.[5] To support its position, Trinity Health points to the Eighth

---

[4]The maximum amount of the civil monetary penalty in § 1132(c)(1) has been increased from $100 to $110 per day. *See* 29 C.F.R. § 2575.502c-1; *In re Interstate Bakeries Corp.*, 704 F.3d 528, 534 n.6 (8th Cir. 2013*); see also Kwan v. Andalex Group*, *L.L.C.*, 737 F.3d 834, 848 n.8 (2nd Cir. 2013).

[5]The Coles are not entitled to actual damages. The only damages that they could recover are based on the $1307 in unreimbursed medical bills they incurred in May 2011. However, "[t]o be eligible to collect the [unreimbursed medical bills], the plaintiff would need to pay the COBRA premium payments." *Rinaldo v. Grand Union Co.*, No. CV–89–3850, 1995 WL 116418, at *2 (E.D.N.Y. Mar. 8, 1995) (citing 29

(Footnote continued . . .

Circuit Court of Appeals's *In re Interstate Bakeries* decision from last year. The Coles counter that the facts here are "dramatically different" than those in *Interstate Bakeries*. Accordingly, a close review of that decision is necessary.

In *Interstate Bakeries*, the employer terminated an employee on September 11, 2006. The employer, however, did not provide the employee with a COBRA notice, so he did not elect to continue his health insurance coverage. *In re Interstate Bakeries Corp.*, 704 F.3d at 532. However, due to a "clerical oversight," the employer did not cancel the employee's health insurance coverage. As a result, the employee received approximately two years' worth of health insurance coverage for free. *Id.* When the employer discovered this, it retroactively cancelled his coverage to his termination date. *Id.* Then, the employer's third-party claims administrator attempted to "claw back" or recover benefits it had paid to health care providers on the employee's behalf. *Id.* The employee's health care providers, in turn, sought reimbursement from the employee. *Id.* at 533. The employee responded by filing an administrative claim in the employer's bankruptcy case, contending that the employer violated COBRA by not providing him with notice of his right to elect the continuation of his health insurance benefits at the time of his termination. *Id.* The employer then retroactively reinstated the employee's coverage from the date of termination to February 1, 2009, when the employee became

---

U.S.C. § 1162(2)(C)). "Where, as here, [the] plaintiff is in a better position not having exercised [her] rights under COBRA, there can be no actual damages." *Id.*; *see Soliman v. Shark Inc.*, No. 00 Civ. 9049, 2004 WL 1672458, at *5 (S.D.N.Y. July 27, 2004).

Medicare-eligible.[6] *Id*. This left a six-month coverage gap between August 2008, when the employee's coverage was terminated, and February 2009, when the employee's coverage was retroactively reinstated. *Id*.

The bankruptcy court granted summary judgment to the employer on the employee's claim for civil penalties for failure to provide COBRA notice. *Id*. The bankruptcy court reasoned that "'the prejudice [the employee] experienced [from the cancellation of coverage] was insignificant compared to the benefit he received from two years of uninterrupted free health care.'" *Id*. The bankruptcy court also found that the employer did not act in bad faith and that a civil penalty was unnecessary to promote compliance with ERISA. *Id*. The employee appealed the bankruptcy court's decision to the district court, which affirmed. *Id*. The employee then appealed to the Eighth Circuit Court of Appeals, which also affirmed. *Id*. at 537. The court initially concluded that the bankruptcy court did not err in weighing the employee's benefit of receiving free medical coverage for an extended period against his claimed damages from the employer's failure to provide COBRA notice. *Id*. at 534. The court further concluded that the lack of "physical impact" on the employee resulting from the lack of COBRA notice weighed against COBRA penalties. *Id*. at 536. The court also observed:

> Whatever the general purposes of COBRA may be, however, § 1132(c)(1) does not mandate a penalty in every case where a gap in health care coverage occurs, but rather it expressly reserves discretion to the court. We decline to

---

[6] "The obligation to provide continuing health care coverage under COBRA ends on the date that the covered individual becomes eligible for Medicare benefits." *In re Interstate Bakeries Corp.*, 704 F.3d at 533 n.5 (citing 29 U.S.C. § 1162(2)(D)(ii)).

> impose a non-statutory requirement that mandates a penalty
> in every such case.

*Id*. at 537. Finally, the court noted that the employer acted in good faith in both its claw back efforts and retroactive termination of the employee's health insurance because both actions occurred before the employer learned it had failed to provide the employee with a timely COBRA notice. *Id*. at 537.

The Coles, like the *Interstate Bakeries'* employee, received free health insurance coverage for a substantial period. Because the Coles were able to obtain health care coverage through Lyle's employer beginning on June 1, 2012, the Coles were without coverage for only one month. The purpose of the civil enforcement provisions of COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation. *See, e.g., Chenoweth v. Wal-Mart Stores, Inc.*, 159 F.Supp.2d 1032, 1041 (S.D. Ohio 2001); *Burgess v. Adams Tool & Engineering, Inc.*, 908 F. Supp. 473, 478 (W.D. Mich. 1995); *DiSabatino v. DiSabatino Bros., Inc.*, 894 F. Supp. 810, 814 (D. Del. 1995); *Van Hoove v. Mid-America Bldg. Maintenance, Inc.*, 841 F. Supp. 1523, 1536 (D. Kan. 1993); *Phillips v. Riverside, Inc.*, 796 F. Supp. 403, 411 (E.D. Ark.1992). Here, because the Coles' benefit of receiving extended free health care coverage far outweighs their claimed damages from the lack of COBRA notice, the Coles are already in a better position than they would have been in but for the COBRA notice violation. Thus, I find that imposing a civil penalty against Trinity Health would not serve the purposes of COBRA.

Moreover, like the *Interstate Bakeries'* employer, I find that Trinity Health acted in good faith. "A finding of bad faith typically requires a 'willful failure on [the plan administrator's] part to send the notice.'" *In re Interstate Bakeries Corp.*, 704 F.3d at 537 (quoting *Starr*, 461 F.3d at 1040). While I recognize that timely COBRA notice was not sent to the Coles, if Trinity Health intended to act in bad faith, free health care

coverage would not have been extended to the Coles. Trinity Health's good faith further weighs against imposing a civil penalty here.

The Coles argue that summary judgment is inappropriate because they faced uncertainty regarding the availability of health insurance for a period and that they postponed medical services during that time. The Coles, however, point to no evidence in the summary judgment record as to what the medical care would have been or how they were physically harmed as a result of the delay in treatment. In rejecting a near identical argument in *Interstate Bakeries*, the Eighth Circuit Court of Appeals observed:

> [A]lthough [plaintiff] avers that he postponed medical care, he offers no specific evidence as to what that medical care would have been or how the postponement resulted in a "physical impact" on him. In the absence of any evidence that Deckard's postponement of medical care during his no-coverage period presented an increased risk such as the spouse in *Fadalla* faced, we cannot say that the bankruptcy court weighed the prejudice against him incorrectly with regard to his evidence of damages.

*In re Interstate Bakeries Corp.*, 704 F.3d at 536 (citation omitted). Discovery is completed and the Coles are expected to lay out all their proof in opposition to Trinity Health's motion. The Coles have failed to demonstrate that they postponed necessary medical care as a result of the COBRA notice violation and how that postponement resulted in harm to them. Thus, I conclude that the Coles' general allegations and speculative inferences are insufficient to deny Trinity Health's motion for summary judgment.

For the reasons discussed above, I decline to impose a civil penalty on Trinity Health for not providing the Coles with timely notice of their COBRA rights. Trinity Health acted in good faith. Moreover, the Coles were not harmed or prejudiced by Trinity Health's tardy notice of their COBRA rights. Rather, the Coles were provided continued medical coverage for approximately eleven months after Bonnie's

14

termination. Under these circumstances, imposing a civil penalty against Trinity Health would not serve the purposes of COBRA. Therefore, I find that the Coles are not entitled to any civil penalties for Trinity Health's tardy COBRA notification and Trinity Health's motion for summary judgment is granted.

### III. CONCLUSION

As discussed above, the Coles concede that Trinity Health did not improperly rescind their health care benefits. I also find that civil penalties for Trinity Health's tardy COBRA notification are unwarranted. Therefore, Trinity Health's motion for summary judgment is granted. Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 21st day of January, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA